UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREN SHANKS,<br><br>            Plaintiff,<br><br>     v.<br><br>E. MENDEZ, et al.,<br><br>            Defendants. | Case No.: 1:20-cv-01083-JLT-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 54) |

Plaintiff Darren Shanks is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' motion for summary judgment, filed December 21, 2021.

**I.**

**RELEVANT BACKGROUND**

This action is proceeding on Plaintiff's retaliation claim against Defendants Mendez and Lopez.

Defendants filed an answer to the complaint on January 29, 2021.

On April 9, 2021, the Court issued the discovery and scheduling order.

1

On December 21, 2021, Defendants filed the instant motion for summary judgment. After receiving an extension of time, Plaintiff filed an opposition on February 18, 2022, and Defendants filed a reply on February 25, 2022.

## II.

## LEGAL STANDARD

### A.     Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d at 942 (quotation marks and citation omitted).

In arriving at these Findings and Recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the

2

argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

### III.

### DISCUSSION

**A.    Summary of Plaintiff's Complaint**

At all relevant times, Plaintiff was incarcerated at the California Substance Abuse and Treatment Facility and State Prison, Corcoran.

Plaintiff has a history of mental illness dating back to his early childhood, as far back as the age of ten. Plaintiff suffers from a myriad of mental illnesses, including severe depression.

Plaintiff has been incarcerated within the California Department of Corrections and Rehabilitation (CDCR) since 2004 and has been in the mental health delivery system since 2016.

On August 2, 2018, Housing Unit 3 dayroom was being conducted. During dayroom a fight occurred involving several inmates. Plaintiff was not involved in the fight. Plaintiff was seated on the dayroom stairs or prone on the floor during the entire fight.

The officer watching over the dayroom yelled over the address system for all inmates to "get down." Plaintiff was already seated on the stairs. A few seconds later when responding staff arrived, all inmates were ordered to "prone out." Plaintiff, as well as others that were not involved, readily complied.

All of the inmates involved were handcuffed and escorted out of the building, and placed in administrative segregation. Likewise, some uninvolved inmates were handcuffed and escorted to the program office and interviewed.

Plaintiff was escorted to the program office, interviewed by lieutenant Mendez, and examined by medical staff. Medical staff found no injuries on Plaintiff consistent with being in a fight. Plaintiff was released and returned back to his housing unit and assigned cell.

The following day, on August 3, 2018, Plaintiff was placed in administrative segregation for battery on inmate Anglin. Plaintiff was subsequently issued a Rules Violation Report (RVR) by Defendant Mendez, charging Plaintiff with "Battery on Inmate with a Deadly Weapon."

On this same date, just prior to being placed in administrative segregation, Plaintiff spoke with Defendant Mendez and asked "why was he (plaintiff) being placed in (Ad. Seg.)?" Defendant Mendez responded, "because you know something, and once I put your ass in the hole, you'll change your mind and tell me what I need to know." Plaintiff responded, "sir, if you are locking me in the hole because I know something, then you should lock every one that was in the dayroom at that time in the hole because they all saw what I saw." Defendant Mendez then stated, "that[']s true, but everybody in the dayroom wasn't a crip. You're a crip and it was crips fighting, and you are going to the hole until you talk." Plaintiff then replied, "sir, please do not put me in the hole, I hav[e]n't done anything, I can't stand the hole right now, I'm seriously depressed and going through a lot. I hav[e]n't done anything. You don't have anything to lock me in the hole for." Defendant Mendez stated, "Well, we'll see about that, I'm having Lt. Lopez do a 114 Lockup Order on your ass and I'm personally going to write you a 115(RVR), and that should hold your ass in the hole long enough to get you to remember what you saw."

Defendant Mendez wrote Plaintiff a false Rules Violation Report and agreed with Defendant D. Lopez in these trumped up charges with the sole purpose of placing Plaintiff in administrative segregation. Plaintiff asked Defendant Lopez, "so you're going to go along with this bullshit and help this man frame me." Defendant Lopez stated, "Well, we gave you a chance to snitch." As a result, Plaintiff was placed in the hole on August 3, 2018. On information and belief, Plaintiff asserts that it is out of the norms of CDCR's policy for a lieutenant to write an inmate a Rules Violation Report unless the lieutenant personally witnessed an incident, which is not the case here. Even so, Rules Violation Reports are usually tasked to observation officers or officers in general.

There were no eyewitnesses that put Plaintiff in the fight that occurred on August 2, 2018. The observation officer (who witnessed the fight) did not identify Plaintiff as a participant in the fight that occurred on August 2, 2018. Even the alleged victim, inmate Anglin never stated that Plaintiff was one of his attackers in the fight.

While in administrative segregation, Plaintiff suffered a mental breakdown. Plaintiff sunk into a deep depression because of the lack of human contact and activity and denial of contact visits with family members. This sudden change in Plaintiff's prison privileges impacted him drastically.

4

Plaintiff's psychiatric medication was increased as a result of his depression, and Plaintiff developed severe headaches and was unable to sleep. Plaintiff also gained over thirty pounds while housed in administrative segregation.

While in administrative segregation, Plaintiff also developed physical injuries, including urinary incontinence. Plaintiff was informed by prison mental health doctors that his condition and weight gain were a direct result of stress after being placed in administrative segregation. Because of the urinary incontinence Plaintiff now wears adult diapers prescribed by prison doctors. Wearing diapers has caused Plaintiff to be ridiculed and humiliated by both inmates and staff.

Plaintiff has underwent exhaustive testing to determine the etiology of his urinary incontinence, and Plaintiff was evaluated by outside doctors as well. All medical professionals have determined there is no specific physical causes for the condition.

Plaintiff spent a total of one hundred and fifty days (150) in administrative segregation, and suffered mental and physical damages. Plaintiff continues to struggle mentally and physically as a direct result of the conduct by Defendants Mendez and Lopez.

On February 26, 2019, Plaintiff had a Rules Violation Report hearing, and he was found not guilty due to a lack of evidence. Plaintiff believes the not guilty finding supports his claim that there was an absence of legitimate governmental objective to place Plaintiff in administrative segregation.

Plaintiff filed an administrative appeal, log number SATF-19-03249. The appeal was answered at the Director's Level on October 28, 2019.

Defendants Mendez and Lopez knew or reasonably should have known that their arbitrary and capricious actions in locking Plaintiff in administrative segregation without the requisite evidence would drastically impact Plaintiff's already fragile mental state and cause depression.

**B.     Statement of Undisputed Facts**

1.     On August 2, 2018, at the California Substance Abuse Treatment Facility and State Prison, Corcoran, inmate Anglin was assaulted and stabbed. (Declaration of Mendez (Mendez Decl.) ¶¶ 2-3, Ex. A; Declaration of Lopez (Lopez Decl.) ¶ 3, Ex. A, pp. 1-6.)

2.     Staff, including Defendants, did not witness the August 2, 2018 assault on inmate Anglin. (Mendez Decl. ¶¶ 4-5, Ex. A, pp. 2, 14-22; Lopez Decl. ¶ 3.)

3.     Plaintiff's Rules Violation Report for the August 2, 2018 incident states, "confidential information received indicated that you were specifically involved in the assault, and are being charged with battery on an inmate with a weapon."  (Mendez Decl. ¶ 5, Ex. A, p. 36.)

4.     Plaintiff's Administrative Segregation Unit Placement Notice following the August 2, 2018 incident states, "information received indicated you participated in the assault of Inmate Anglin with a weapon.  Based on the confidential information received you Inmate Shanks are being removed from Facility C IV 180 and are being rehoused in Short Term Restricted Housing pending Administrative Review."  (Lopez Decl. ¶ 5, Ex. A, p. 32.)

5.     Plaintiff's Rules Violation Report for the August 2, 2018 incident was heard on February 26, 2019.  (Mendez Decl. ¶ 7, Ex. B.)

6.     The Senior Hearing Officer at Plaintiff's disciplinary hearing for the August 2, 2018 Rules Violation Report explained that, although Plaintiff was identified by the confidential source as an attacker in the first two interviews, the confidential source gave Plaintiff "a completely different role, not involved in the actual battery, in the third interview.  (Mendez Decl., Ex. B, p. 13.)

7.     The Senior Hearing Officer at Plaintiff's disciplinary hearing for the August 2, 2018 Rules Violation Report noted that he was unsure as to what Plaintiff's actual involvement was but that the discrepancy between the confidential source's accounts could not be resolved and, therefore, the confidential source was not reliable.  (Mendez Decl., Ex. B, p. 13.)

8.     The Senior Hearing Officer at Plaintiff's disciplinary hearing for the August 2, 2018 Rules Violation Report concluded, "[w]ithout this source being considered reliable" with respect to Plaintiff's involvement in the August 2, 2018 incident, "there is insufficient evidence to support a guilty verdict in this matter." (Mendez Decl. Ex. B, p. 13.)

9.     Because the Senior Hearing Officer at Plaintiff's disciplinary hearing for the August 2, 2018 Rules Violation Report determined that the confidential source was not reliable, he dismissed Plaintiff's Rules Violation Report. (Mendez Decl. ¶ 7, Ex. B, p. 13.)

**C.     Analysis of Defendants' Motion**

Defendants argue they did not retaliate against Plaintiff and are entitled to qualified immunity.

In opposition, Plaintiff argues Defendants have lied and placed him in administrative segregation and issued a Rules Violation Report because he was a Crip and would not lie or snitch on the attackers from the August 2, 2018 stabbing of inmate Anglin. (ECF No. 53 at 6-7, 20.) In response, Defendants argue that Plaintiff has failed to support his retaliation claim with sufficient evidence to create a triable issue of fact.

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012). Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005).

Following screening, Plaintiff's complaint proceeds on the sole claim that the conduct of Defendants E. Mendez and D. Lopez constituted retaliation in violation of the First Amendment. (ECF Nos. 18, 19.)

The United States Supreme Court has found that "the First Amendment guarantees 'freedom of speech,' a term necessarily comprising the decision of both what to say and what not to say," Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc., 487 U.S. 781, 797 (1988). However, some "courts have expressed skepticism that prisoners have a right against compelled speech, particularly in the context of a legitimate investigation." Williams v. Brown, No. 17-cv-11-BBC, 2017 WL 782958, at *2 (W.D. Wis. Feb. 28, 2017) (citing cases). See, e.g., Ayala v. Harden, No. 1:12-cv-00281-AWI, 2012 WL 4981269, at *2 (E.D. Cal. Oct. 17, 2012) ("Refusal to become an informant is not a protected First Amendment activity."); Wilcher v. Raemisch, No. 12-cv-803-JDP, 2014 WL 3509395, at *5 (W.D. Wis. July 15, 2014) (opining in dicta that the "weight of authority probably supports defendants' view that the refusal to answer legitimate investigatory questions in a prison is not protected speech," but

7

finding that the court need not reach the issue). Inmates certainly retain constitutional rights, however, such "rights may be restricted in ways that would raise grave First Amendment concerns outside the prison context." Gee v. Pacheco, 627 F.3d 1178, 1187 (10th Cir. 2010) (quotation omitted). Nevertheless, the Supreme Court has determined that a prisoner "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974).

This Court (and Defendants) could not locate a case by the United States Supreme Court or Ninth Circuit which establishes a prisoner's First Amendment right to withhold information from correctional staff about the commission of a crime within prison as protected activity under the First Amendment. Indeed, the Ninth Circuit recently affirmed qualified immunity on this issue finding that "First Amendment compelled speech and retaliation claims … were not established in any circuit at the time of the alleged violation, and still are not established in the circuit." Mora-Contreras v. Peters, 851 F. App'x 73, 74 (9th Cir. 2021). However, the Second Circuit has recognized such right stating, "the First Amendment protects a prisoner's right not to serve as an informant. Burns v. Martuscello, 890 F.3d 77, 84, 94 (2d Cir. 2018) (acknowledging that "neither the Supreme Court nor any other circuit court ha[d] yet to decide whether a prisoner holds a right not to serve as an informant.").[1] At least one District Court has recognized a "First Amendment right not to speak." Powell v. Wilner, No. 06-cv-00545-WYD-MEH, 2009 WL 840756, at *1 (D. Colo. Mar. 30, 2009). In addition, several District courts have assumed, without deciding, that an inmate has a constitutional right to refuse to participate in a prison investigation. See David v. Hill, 401 F.Supp.2d 749, 757 (S.D. Tex. 2005); Jackson v. Johnson, 15 F. Supp. 2d 341, 364 (S.D.N.Y. 1998); Soto v. New Jersey, No. CV17-13450-FLW-DEA, 2020 WL 2537857, at *5 (D.N.J. May 19, 2020).

While this Court is quite troubled by the result of this findings and recommendation in light of the averments given by the Plaintiff, this Court is, nevertheless, bound by the law of the United States

---

[1] The holding in Burns is limited to "the distinct circumstances of an inmate punished only in retaliation for refusing to provide information as it may come to the inmate's attention on an ongoing basis." Id. at 93.

1  when it comes to qualified immunity analysis and this Court's role.[2]  Therefore, in the context of this

2  qualified immunity analysis, the Court is directed to forego making a determination of whether an

3  inmate maintains a First Amendment right to not speak to correctional officers regarding an

4  investigation because federal courts have a "strong duty to avoid constitutional issues that need not be

5  resolved in order to determine the rights of the parties to the case under consideration." Cty. Ct. of

6  Ulster Cty., N. Y. v. Allen, 442 U.S. 140, 154 (1979).  This is particularly so in this instance because

7  as explained below it is clear that Defendants are entitled to qualified immunity.

8        The doctrine of qualified immunity protects government officials from civil liability where

9  "their conduct does not violate clearly established statutory or constitutional rights of which a

10  reasonable person would have known. Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow

11  v. Fitzgerald, 457 U.S. 800, 818 (1982)).

12        "Qualified immunity gives government officials breathing room to make reasonable but

13  mistaken judgments about open legal questions." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011).

14  When considering an assertion of qualified immunity, the court makes a two-pronged inquiry: (1)

15  whether the plaintiff has alleged the deprivation of an actual constitutional right and (2) whether such

16  right was clearly established at the time of defendant's alleged misconduct. See Pearson v. Callahan,

17  555 U.S. at 232 (2009) (quoting Saucier v. Katz, 535 U.S. 94, 201 (2001)).  A district court is

18  "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified

19  immunity analysis should be addressed first in light of the circumstances in the particular case at

20  hand." Pearson, 555 U.S. at 236.

21        "For the second step in the qualified immunity analysis—whether the constitutional right was

22  clearly established at the time of the conduct—the critical question is whether the contours of the right

23  were 'sufficiently clear' that every 'reasonable official would have understood that what he is doing

---

[2] It must be noted that despite using the phraseology of this sentence, the Court does not suggest, at all, that the averments given by the Plaintiff are in fact true, nor the denials by the Defendant, for that matter.  However, it is nonetheless deeply concerning that if true (as determined by a trier of fact in the adjudicative process), the Plaintiff was essentially forced into solitary confinement for refusing to speak, when he may only have been wholly uninvolved aside from being in the proximity of the incident, and is foreclosed from any remedy in this Court.  The ramifications of such a potentially coercive and punitive investigative system, if based in truth, would similarly remain unremedied by this Court, at least at this time.

violates that right.' " Mattos v. Agarano, 661 F.3d 433, 442 (9th Cir. 2011) (quoting al-Kidd, 563 U.S. at 741) (some internal marks omitted). "The plaintiff bears the burden to show that the contours of the right were clearly established." Clairmont v. Sound Mental Health, 632 F.3d 1091, 1109 (9th Cir. 2011). "[W]hether the law was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition." Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1050 (9th Cir. 2002) (citation and internal marks omitted).  In making this determination, courts consider the state of the law at the time of the alleged violation and the information possessed by the official to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal. Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir. 2007); see also Hope v. Pelzer, 536 U.S. 730, 741 (2002) (the "salient question" to the qualified immunity analysis is whether the state of the law at the time gave "fair warning" to the officials that their conduct was unconstitutional). "[W]here there is no case directly on point, 'existing precedent must have placed the statutory or constitutional question beyond debate.' " C.B. v. City of Sonora, 769 F.3d 1005, 1026 (9th Cir. 2014) (citing al-Kidd, 563 U.S. at 740).  An official's subjective beliefs are irrelevant. Inouye, 504 F.3d at 712.

As stated by the Ninth Circuit in Mora-Contreras, it is not clearly established whether inmates maintain a First Amendment right to withhold information from correctional staff about the commission of a crime within prison. Mora-Contreras, 851 F. App'x. at 74; see also Rivera v. Long, No. 19-cv-03608-CMA-NYW, 2021 WL 5917453, at *16 (D. Colo. Dec. 10, 2021) (analyzing same retaliation claim under the First Amendment finding inmate's right to refuse to participate in a prison investigation was not clearly established at the time of the alleged retaliation).  Accordingly, because an inmate's right to refuse to provide information relating to a prison investigation was not clearly established in 2018 (and is not today), no reasonable prison official would have been on notice that their conduct violated Plaintiff's constitutional rights.  Moreover, even if the Second Circuit's decision in Burns could be viewed as clearly establishing such right, the Court expressly declined to determine whether an inmate has constitutional right to refuse to provide information about a past event.  See Routt v. Howry, 835 F. App'x 379, 385 (10th Cir. 2020) (unpublished) (one case from another Circuit "is insufficient to constitute the weight of authority from other circuits that is necessary to finding"

clearly established law); see also Christensen v. Park City Mun. Corp., 554 F.3d 1271, 1278 (10th Cir. 2009) (a "handful of decisions from courts in other circuits" which are not "broadly accepted" did not constitute "weight of authority"). "[O]rdinarily a court would expect to see cases from at least three other circuits before concluding that a right is clearly established." Prison Legal News, Inc. v. Simmons, 401 F. Supp. 2d 1181, 1192 (D. Kan. 2005). Furthermore, Plaintiff has pointed to no authority establishing that an inmate has a constitutional right to refuse to provide information regarding a prison investigation about a prior incident, nor could the Court find authority consistent with the Supreme Court's present standards concerning what constitutes "clearly established." Clairmont v. Sound Mental Health, 632 F.3d at 1109. Accordingly, Defendants' motion for summary judgment on the basis of qualified immunity should be granted.

## IV.
## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment be granted on the basis of qualified immunity; and

2. Judgment be entered in favor of Defendants.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **August 8, 2022**

UNITED STATES MAGISTRATE JUDGE

11